1

2

3

4

5

6

7

8                         UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    CHRIS HARRIS,                              No.  2:14-cv-01769 JAM AC PS

12                     Plaintiff,

13          v.                                   FINDINGS AND RECOMMENDATIONS

14    SECRETARY OF HOUSING AND
      URBAN DEVELOPMENT, ET AL.,
15
                       Defendants.
16

17          On October 1, 2014, the court held a hearing on the motion to dismiss brought by the

18    Secretary of Housing and Urban Development ("defendant") and on the motion to remand

19    brought by plaintiff Chris Harris ("plaintiff").  Plaintiff appeared pro se and counsel Gregory

20    Broderick appeared for defendant.  Also before the court is plaintiff's October 1, 2014 request to

21    amend his complaint.  On review of the motions, the documents filed in support and opposition,

22    upon hearing the arguments of plaintiff and counsel and good cause appearing therefor, THE

23    COURT FINDS AS FOLLOWS:

24                              PROCEDURAL HISTORY

25          On July 25, 2014, this action was removed by defendant under 28 U.S.C. §§ 1441 and

26    1442.  ECF No. 1 at 1.  On August 19, 2014, defendant moved to dismiss for lack of subject

27    matter jurisdiction.  ECF No. 6.

28    ////

On August 27, 2014, plaintiff, through counsel, filed a motion to remand this action to Placer County Superior Court.  ECF No. 7.

On September 3, 2014, plaintiff's counsel filed a motion to withdraw.  ECF No. 8.  On September 8, 2014, plaintiff signed and filed a motion for temporary restraining order and motion for preliminary injunction, ECF Nos. 9, 11, and filed an opposition to defendant's motion to dismiss, ECF No. 12.  On September 8, 2014, the district judge vacated the motion for temporary restraining order and preliminary injunction as improperly filed.  ECF No. 17.

On September 12, 2014, the court granted plaintiff's counsel's motion to withdraw as counsel and referred the matter to the undersigned under Local Rule 302(c)(21).  ECF No. 17.  Also on September 12, 2014, defendant re-noticed its motion to dismiss, ECF No. 18, and plaintiff filed a declaration in support of his motion for temporary restraining order and preliminary injunction, ECF No. 19.  On September 17, 2014, defendant opposed plaintiff's motion to remand.  ECF No. 20.

On September 19, 2014, plaintiff filed a motion for temporary restraining order.  ECF No. 21.  On September 22, 2014, defendant responded to the motion for temporary restraining order.  ECF No. 23.  On September 23, 2014, the district judge denied the motion, finding plaintiff failed to establish a likelihood of success on the merits.  ECF No. 25 at 2.

On September 24, 2014, defendant filed a reply in support of its motion to dismiss.  ECF No. 26.  Plaintiff did not file a reply in support of his motion to remand.

On October 1, 2014, following the court's hearing on the instant motions, plaintiff filed a document styled as a response to defendant's reply to the motion to dismiss.  ECF No. 28.  In his response, plaintiff addresses some of the issues raised during the hearing and seeks leave to amend his complaint.  Id.

## LEGAL STANDARDS

A.    Remand

The removal statute provides that "any civil action brought in a [s]tate court of which the district courts of the United States have original jurisdiction" may be removed by a defendant to a federal district court.  28 U.S.C. § 1441(a).  A motion to remand based on any defect other than

1   subject matter jurisdiction must be made within thirty days after the filing of the notice of

2   removal, but the court may consider whether it has subject matter jurisdiction over a case at any

3   time. 28 U.S.C. § 1447(c). "[J]urisdiction must be analyzed on the basis of the pleadings filed at

4   the time of removal without reference to subsequent amendments." Sparta Surgical Corp. v. Nat'l

5   Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir. 1998) (citing Pfeiffer v. Hartford Fire

6   Ins. Co., 929 F.2d 1484, 1488 (10th Cir. 1991)).

7        The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction."

8   Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citing Boggs v. Lewis, 863 F.2d 662, 663

9   (9th Cir. 1988); Takeda v. Nw. Nat'l Life Ins. Co., 765 F.2d 815, 818 (9th Cir. 1985)). "Federal

10  jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."

11  Gaus, 980 F.2d at 566 (citing Libhart v. Santa Monica Dairy Co., 592 F.2d 1062, 1064 (9th Cir.

12  1979)). There is a "strong presumption" against removal jurisdiction, which "means that the

13  defendant always has the burden of establishing that removal is proper." Gaus, 980 F.2d at 566.

14  Accordingly, "the court resolves all ambiguity in favor of remand to state court." Hunter v.

15  Phillip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing Gaus, 980 F.2d at 566).

16  B.      Lack of Subject Matter Jurisdiction

17       Federal courts are courts of limited jurisdiction, and are presumptively without

18  jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377

19  (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. Id.

20  Because subject matter jurisdiction involves a court's power to hear a case, it can never be

21  forfeited or waived. United States v. Cotton, 535 U.S. 625, 630 (2002).

22       Federal Rule of Civil Procedure 12(b)(1) allows a defendant to raise the defense, by

23  motion, that the court lacks jurisdiction over the subject matter of an entire action or of specific

24  claims alleged in the action. "A motion to dismiss for lack of subject matter jurisdiction may

25  either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the

26  existence of subject matter jurisdiction in fact." Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.,

27  594 F.2d 730, 733 (9th Cir. 1979).

28  ////

3

When a party brings a facial attack to subject matter jurisdiction, that party contends that the allegations of jurisdiction contained in the complaint are insufficient on their face to demonstrate the existence of jurisdiction. <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a Rule 12(b)(1) motion of this type, the plaintiff is entitled to safeguards similar to those applicable when a Rule 12(b)(6) motion is made. <u>See</u> <u>Sea Vessel Inc. v. Reyes</u>, 23 F.3d 345, 347 (11th Cir. 1994); <u>Osborn v. United States</u>, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The factual allegations of the complaint are presumed to be true, and the motion is granted only if the plaintiff fails to allege an element necessary for subject matter jurisdiction. <u>Savage v. Glendale Union High Sch. Dist. No. 205</u>, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003); <u>Miranda v. Reno</u>, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Nonetheless, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack. <u>Safe Air for Everyone</u>, 373 F.3d at 1039.

When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction, no presumption of truthfulness attaches to the plaintiff's allegations. <u>Thornhill Publ'g Co.</u>, 594 F.2d at 733. "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988). When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, plaintiff has the burden of proving that jurisdiction does in fact exist. <u>Thornhill Publ'g Co.</u>, 594 F.2d at 733.

ALLEGATIONS OF THE COMPLAINT

Plaintiff's complaint alleges as follows. In May 2013 plaintiff entered into a residential lease with an option to purchase with defendant Thao Pham, an individual residing in Placer County. Compl. ¶¶ 3, 7, ECF No. 1 Ex. A. Plaintiff did not know or suspect that defendant Pham did not own the subject property. <u>Id.</u> ¶ 9. In July 2013 Bank of America foreclosed on the subject property. <u>Id.</u> Defendant, through its sub-agency the Federal Housing Administration, "insured the mortgage loan issued by Bank of America" to defendant Pham. <u>Id.</u> ¶ 10.

In May 2013, plaintiff moved into and began renovation of the subject property. <u>Id.</u> ¶ 11. "The home required extensive repairs, particularly in the bathrooms and kitchen areas, most of

4

1    which were undertaken by Plaintiff between May 9, 2013 and early June 2013." Id.  Plaintiff

2    spent approximately $51,000 on improvements to the subject property.  Id.  Plaintiff completed

3    repairs such as replacing missing toilets, replacing inoperative appliances, repairing holes in

4    ceilings and walls, and replacing a non-functional HVAC system and a faulty electrical system.

5    Id. ¶ 12.  Plaintiff continued to make regular rent payments to defendant Pham.  Id. ¶ 13.

6         "In mid-July 2013, Plaintiff was contacted by a representative of 'Sentinel Field Services'

7    who advised Plaintiff that his company was scheduled to perform repairs on behalf of

8    [defendant]." Id. ¶ 14.  It was at this time that plaintiff learned that defendant acquired the

9    property through foreclosure in September 2012.  Id.  Plaintiff was served with a "Notice to Quit"

10   in late November 2013 by defendant's counsel.  Id. ¶ 17.  "From December 2013 through mid-

11   March 2014, Plaintiff tried various departments at Defendant HUD and related agencies to obtain

12   information about purchasing the Subject Real Property."  Id. ¶ 18.  On March 17, 2014, plaintiff

13   spoke with Tom Rose, a representative of defendant.  Id. ¶ 19.  After plaintiff explained his

14   circumstances, Mr. Rose "expressly promised to Plaintiff that HUD would sell the Subject Real

15   Property for a price based upon the home's appraised value with an adjustment (reduction) based

16   upon Plaintiff's documented repairs."  Id.  Thereafter, plaintiff retained a real estate agent

17   employed by defendant Mid Valley Mortgage Services, Inc.  Id. ¶ 20.

18        On March 6, 2014, defendant filed an unlawful detainer action against plaintiff in Placer

19   County Superior Court seeking to evict plaintiff from the subject property.  Id. ¶ 22.  Plaintiff

20   obtained an appraisal of the subject property based on Mr. Rose's March 17, 2014

21   representations.  Id. ¶ 23.  On April 4, 2014, following receipt of the appraisal, plaintiff spoke

22   with another representative of defendant, Diana Dickson, who "disclaimed any knowledge of the

23   promise by Tom Rose, on behalf of Defendant HUD, to sell the home to Plaintiff."  Id. ¶ 26.

24   Plaintiff then spoke with Mr. Rose, who "informed Plaintiff that Defendant HUD would no

25   longer sell the Subject Real Property with any adjustment down from the appraised value . . . ."

26   Id. ¶ 27.  Mr. Rose "stated to Plaintiff that once the Plaintiff obtained his financing for the

27   purchase, HUD would close on the sale of the Subject Real Property" for the appraised value.  Id.

28        Meanwhile, defendant continued to pursue its unlawful detainer action in Placer County

1   Superior Court. Id. ¶ 29. Plaintiff understood that he would not be evicted as long as he

2   "proceeded diligently and completed the purchase of the Subject Real Property." Id. ¶ 30. On

3   June 6, 2014, the Placer County Superior Court ruled in favor of Defendant HUD on the unlawful

4   detainer matter. Id. ¶ 31.

5       Plaintiff alleges four claims against defendant: (1) breach of contract; (2) promissory

6   estoppel; (3) restitution as good faith improver of property; and (4) declaratory relief regarding

7   equitable lien rights. Id. ¶¶ 35–61. Plaintiff also alleges a fraud claim against defendant Pham,

8   id. ¶¶ 62–67, and professional negligence and breach of fiduciary duty claims against defendants

9   Ugarte and Mid Valley Mortgage Services, Inc., id. ¶¶ 68–76. The allegations regarding claims

10  one, two and three against the moving federal defendant are discussed in detail below. Because

11  declaratory relief is not a separate claim but a measure of relief, Stock W., Inc. v. Confederated

12  Tribes of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989), plaintiff's request for

13  declaratory relief is discussed only as it relates to his first three claims. See Lane v. Vitek Real

14  Estate Indus. Grp., 713 F. Supp. 2d 1092, 1104 (E.D. Cal. 2010) ("Declaratory and injunctive

15  relief are not independent claims, rather they are forms of relief."); Shaterian v. Wells Fargo

16  Bank, N.A., 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011) (a party is not entitled to declaratory

17  relief "absent a viable underlying claim.").

18                                          DISCUSSION

19  A.      Motion to Remand

20      Through counsel, plaintiff filed a motion to remand this action to Placer County Superior

21  Court. ECF No. 7. Plaintiff argues that "[d]espite its status as a federal agency and assertion of

22  'federal officer' removal rights under 28 U.S.C. § 1442(a), Defendant HUD is still subject to the

23  rule that prior conduct in state court may constitute a waiver of right to remove case." Id. at 7.

24  Plaintiff contends that defendant "has already availed itself of jurisdiction of the Placer County

25  Superior Court through the pending unlawful detainer case" and "[b]ased upon its decision to

26  utilize the Placer [C]ounty Superior Court to adjudicate these claims and to use state court

27  remedies, Defendant HUD has manifested its intention to have the matter adjudicated there." Id.

28  (quotation and citation omitted).

1    In opposition, defendant argues that plaintiff's complaint "alleges that an employee of

2    [defendant] made and breached an oral contract to sell him a federally-owned property."  ECF

3    No. 20 at 1.  Defendant argues that this action was properly removed under 28 U.S.C.

4    § 1442(a)(1), "which permits removal of any state court action against any federal agency or

5    officer if it is 'for or relating to any act under color of such office . . . .'"  Id. at 3 (quoting 28

6    U.S.C. § 1442(a)(1)).  Defendant further argues that "[p]laintiff's argument that the United States

7    waived its right to remove this case by litigating a different case against him in state court is

8    meritless."  ECF No. 20 at 1.  Defendant argues that it did not waive its right to remove this

9    action and "[c]ourts have repeatedly rejected the argument that conduct in one case may waive

10   the right to remove another, even where the two cases are factually and legally similar."  Id. at 4

11   (citations omitted).  Finally, defendant argues that this action was properly removed because there

12   is federal question jurisdiction.  Id. ("Although Plaintiff asserts that all of his claims are under

13   state law, any breach of contract claim against a federal agency is evaluated under federal law."

14   (emphasis omitted)).

15       A civil action against the United States, any agency of the United States, or any officer of

16   the United States may be removed to federal district court.  28 U.S.C. § 1442(a)(1).  As a federal

17   agency, defendant may therefore remove this action to federal court.  The question here is

18   whether defendant waived its right to remove this action by pursuing a separate unlawful detainer

19   action against plaintiff in Placer County Superior Court.

20       A defendant may waive the right to remove a state court action to federal court by taking

21   action in state court, after it is apparent that the case is removable, that manifests the defendant's

22   intent to (1) have the action adjudicated in state court, and (2) abandon the right to a federal

23   forum.  Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1240 (9th Cir. 1994).  "A

24   waiver of the right of removal must be clear and unequivocal."  Id. (quoting Beighley v. FDIC,

25   868 F.2d 776, 782 (5th Cir. 1989)).  In general, the right of removal is not lost by action in the

26   state court short of proceeding to an adjudication on the merits.  Id.

27       Here, plaintiff argues that defendant waived its right to remove by taking action in a

28   separate unlawful detainer matter it initiated in March 2014, before plaintiff filed the instant

1    action in Placer County Superior Court in July 2014.  Plaintiff cites no authority for the

2    proposition that a federal agency waives its right to remove to federal court where it pursued an

3    action in state court prior to a plaintiff initiating a separate action in state court.  Rather, the cases

4    cited by plaintiff address action taken in state court by a removing party *in the same case* that was

5    removed to federal court.  There has been no "clear and unequivocal" waiver of defendant's right

6    to remove because defendant's conduct in the related unlawful detainer matter does not involve

7    the instant state court action.  <u>Resolution Trust Corp.</u>, 43 F.3d at 1240.  Accordingly, defendant's

8    actions in state court cannot amount to a waiver of its right to remove.

9         Defendant took no action in this case, prior to removal, that indicated an intent to have the

10   state court adjudicate plaintiff's claims against it.  No facts support a finding that defendant

11   intentionally abandoned a federal forum prior to removal.  <u>See</u> <u>id.</u>  Accordingly, plaintiff's motion

12   to remand must be denied.

13   B.      Motion to Dismiss

14        Having removed this action from state court, defendant now moves to dismiss for lack of

15   subject matter jurisdiction.  Specifically, defendant argues that it has not waived its sovereign

16   immunity as to plaintiff's promissory estoppel claim, and that the Tucker Act invests the Court of

17   Federal Claims with exclusive jurisdiction over plaintiff's remaining restitution and breach of

18   contract claims.  ECF No. 6-1 at 1 (citing 28 U.S.C. § 1491(a)).

19        1.      Applicable Principles Of Sovereign Immunity

20        "The United States, as sovereign, is immune from suit save as it consents to be sued."

21   <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941).  "There cannot be a right to money

22   damages without a waiver of sovereign immunity."  <u>United States v. Testan</u>, 424 U.S. 392, 400

23   (1983).  "[T]he United States may not be sued without its consent and . . . the existence of consent

24   is a prerequisite for jurisdiction."  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  The

25   Supreme Court has articulated a two-step analysis for determining whether sovereign immunity

26   shields a government agency from a particular claim.  A court first asks "whether there is a

27   waiver of sovereign immunity for actions against" a government agency.  <u>U.S. Postal Serv. v.</u>

28   <u>Flamingo Indus. (USA) Ltd.</u>, 540 U.S. 736, 743 (2004) (citing <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471,

483 (1994)).  If there is, a court then asks the second question, which is "whether the source of substantive law upon which the claimant relies provides an avenue for relief."  <u>Meyer</u>, 510 U.S. at 484.

A party bringing a claim against the federal government bears the burden of showing an unequivocal waiver of immunity.  <u>Holloman v. Watt</u>, 708 F.2d 1399, 1401 (9th Cir. 1983).  "Thus, the United States may not be sued without its consent and the terms of such consent define the court's jurisdiction."  <u>Baker v. United States</u>, 817 F.2d 560, 562 (9th Cir. 1987).  "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."  <u>McCarthy</u>, 850 F.2d at 560.  "Absent consent to sue, dismissal of the action is required."  <u>Hutchinson v. United States</u>, 677 F.2d 1322, 1327 (9th Cir. 1982).

2.     <u>Promissory Estoppel</u>

With regard to plaintiff's claim for promissory estoppel (Second Cause of Action), plaintiff alleges that defendant entered into a verbal agreement with plaintiff to sell the property.  Compl. ¶ 44.  Plaintiff alleges that defendant's representative Mr. Rose "made a clear and unambiguous promise to sell the home to Plaintiff for the 'appraised value' minus the documented repairs undertaken by Plaintiff."  <u>Id.</u> ¶ 45.  Plaintiff alleges that this claim is not subject to the Little Tucker Act or the Tucker Act, 28 U.S.C. §§ 1346, 1491,[1] because defendant "already availed itself of the jurisdiction of this Court in the filing of the Unlawful Detainer lawsuit against Plaintiff . . . ."  <u>Id.</u> ¶ 45.  Plaintiff further alleges that he relied on defendant's representations to his detriment in several ways, including:

> (1) having incurred expenses to purchase the home including a separate appraisal by a HUD-certified appraiser; (2) passed up other opportunities to purchase comparable properties with financing superior to what Plaintiff can obtain at the present time; and (3) lost opportunity to pursue recovery against Defendant THAO PHAM.

---

[1]  As explained more fully below, the Tucker Act gives the Court of Federal Claims exclusive jurisdiction over contract claims against the United States in excess of $10,000.  The Little Tucker Act gives the district courts concurrent jurisdiction over contract claims that do not exceed $10,000.

1    Id. ¶ 47.  Plaintiff alleges that because of his detrimental reliance on defendant's verbal promises,

2    defendant is "now obligated under the doctrine of promissory estoppel to complete the purchase

3    of the Subject Real Property consistent with those terms as agreed on March 17, 2014."  Id. ¶ 48.

4         In its motion to dismiss, defendant argues that it has not waived its sovereign immunity.

5    ECF No. 6-1 at 1–2.  Plaintiff opposes, arguing that while defendant "correctly states that

6    pursuant to well-established Ninth Circuit precedent, without a waiver of sovereign immunity,

7    this Court lacks subject matter for claim[s] against the United States," ECF No. 12 at 7, plaintiff

8    in this action "can maintain a contract-based claim against Defendant HUD given the statutory

9    waiver of sovereign immunity under Section 1702 of the National Housing Act," id. at 8.

10        Promissory estoppel is not a "contract-based claim," but an alternative equitable theory

11   asserted where the elements necessary for an enforceable contract are missing.  Promissory

12   estoppel is "a doctrine which employs equitable principles to satisfy the requirement that

13   consideration must be given in exchange for the promise sought to be enforced."  Raedeke v.

14   Gibraltar Sav. & Loan Ass'n, 10 Cal. 3d 665, 672 (1974).  "[P]romissory estoppel claims are

15   aimed solely at allowing recovery in equity where a contractual claim fails for a lack of

16   consideration, and in all other respects the claim is akin to one for breach of contract . . . ."  US

17   Ecology, Inc. v. State, 129 Cal. App. 4th 887, 904 (2005).  "The vital principle is that he who by

18   his language or conduct leads another to do what he would not otherwise have done shall not

19   subject such person to loss or injury by disappointing the expectations upon which he acted."

20   Garcia v. World Sav., FSB, 183 Cal. App. 4th 1031, 1041 (2010).  As explained by the Ninth

21   Circuit in Jablon v. United States, 657 F.2d 1064, 1068 (9th Cir. 1981), "promissory estoppel is

22   used to create a cause of action, whereas equitable estoppel is used to bar a party from raising a

23   defense or objection it otherwise would have, or from instituting an action which it is entitled to

24   institute."  Id.  "Promissory estoppel is a sword, and equitable estoppel is a shield."  Id.

25        The Ninth Circuit has expressly held that the United States has not waived its sovereign

26   immunity with regard to promissory estoppel claims.  Jablon, 657 F.2d at 1070 ("We therefore

27   conclude that the government has not waived its sovereign immunity with regard to a promissory

28   estoppel cause of action."); see also United States v. Lee, No. C–08–2595 JCS, 2011 WL

1344215, at *6 n.4 (N.D. Cal. Apr. 8, 2011) (noting that it is "questionable whether a promissory estoppel claim could proceed against the government because of the United States' sovereign immunity" (citing <u>Jablon</u>, 657 F.2d at 1070)).  Plaintiff cites no authority, and the court is unaware of any, supporting the proposition that the National Housing Act provides an exception to the government's sovereign immunity with regard to a promissory estoppel claim.  Pursuant to <u>Jablon</u>, plaintiff's promissory estoppel claim is barred and must be dismissed with prejudice.

3.      <u>Restitution as Good Faith Improver of Property</u>

With regard to plaintiff's claim for restitution (Third Cause of Action), plaintiff alleges that he "had no knowledge or reason to suspect that Defendant THAO PHAM was not the actual owner of the home, or that Plaintiff could not exercise the 'option to purchase' the Subject Real Property to enjoy these improvements."  Compl. ¶ 52.  Plaintiff alleges that the repairs and improvements he made to the property "confer a significant monetary benefit upon" defendant, <u>id.</u> ¶ 53, and "[u]nder the equitable principles of California common law regarding 'good faith improver' of real property, Plaintiff is entitled to restitution for the value of his repairs that improved" the property, <u>id.</u> ¶ 54.  Plaintiff also seeks declaratory relief, alleging that under California common law for good faith improvers "he has a valid and enforceable equitable lien against the Subject Real Property to enforce his claim against" defendant for recovery of the monetary value of the improvements he made between May and July 2013.  <u>Id.</u> ¶ 59.

Plaintiff clarified during the hearing that he is not bringing this claim based on an alleged enforceable agreement with defendant.  Rather, plaintiff seeks to be compensated for the improvements he made to the property prior to forming an alleged agreement with defendant's representative Mr. Rose.

"There is no cause of action for restitution, but there are various causes of action that give rise to restitution as a remedy."  <u>Robinson v. HSBC Bank USA</u>, 732 F. Supp. 2d 976, 987 (N.D. Cal. 2010) (citing <u>McBride v. Boughton</u>, 123 Cal. App. 4th 379, 388–89 (2004)).  A party is required to make restitution "if he or she is unjustly enriched at the expense of another.  A person is enriched if the person receives a benefit at another's expense."  <u>McBride</u>, 123 Cal. App. 4th at 389.  California provides a good faith improver the right to initiate an independent legal action to

11

1    recover compensation for improvements made to a property.  CAL. CIV. PROC. CODE § 871.1.  A

2    good faith improver is defined as "[a] person who makes an improvement to land in good faith

3    and under the erroneous belief, because of a mistake of law or fact, that he is the owner of the

4    land."  Id.; see, e.g., Gilardi v. Hallam, 30 Cal. 3d 317, 325 (1981) ("The improver has the burden

5    of establishing entitlement to such relief, and the 'degree of negligence' will be taken into

6    account in determining whether he is in good faith and in determining what relief is consistent

7    with substantial justice.").  This section does not apply to improvements made to land owned by a

8    public entity, which includes the United States and a public agency.  CAL. CIV. PROC. CODE

9    § 871.7(a).

10        Here, plaintiff's claim for restitution fails for two reasons.  First, under California's good

11   faith improver statute, the improver must allege that he was "under the erroneous belief . . . that

12   he is the owner of the land."  CAL. CIV. PROC. CODE § 871.1.  However, plaintiff alleges he was

13   leasing the property with an option to buy at the time he made the improvements, not that he

14   believed he owned the property.  Compl. ¶ 7.  Second, California's statute does not apply to

15   improvements made to land owned by the United States or a public agency.  CAL. CIV. PROC.

16   CODE § 871.7(a).  In this action, defendant acquired the property at issue through foreclosure in

17   September 2012, Compl. ¶ 14, and plaintiff alleges he made improvements to the property

18   between May and June 2013, id. ¶ 11.  The good faith improver statute does not apply to these

19   improvements because they were made to land owned by defendant, which is an agency of the

20   United States.  Accordingly, plaintiff's restitution claim must be dismissed with prejudice.  To the

21   extent plaintiff seeks declaratory relief based on his restitution claim, such relief must be denied.

22        4.        Breach of Contract

23        Finally, as to plaintiff's claim for breach of contract (First Cause of Action), plaintiff

24   alleges that on or about March 17, 2014 defendant entered into a verbal agreement to sell the

25   property to plaintiff for the appraised value less the cost of repairs completed by plaintiff.  Compl.

26   ¶ 36.  Plaintiff believed that defendant's promise to sell the property would be based on an

27   appraisal by a HUD-certified appraiser, and plaintiff "fully performed, or has attempted to

28   perform fully all acts required pursuant to Plaintiff's agreement with defendant . . . ."  Id. ¶¶ 37–

1   38.  Plaintiff alleges that defendant "has breached this agreement by refusing to perform the terms

2   of the agreements by failing to provide a written purchase agreement for the sale of the Subject

3   Real Property and to complete the sale of the home to Plaintiff."  Id. ¶ 39.  Plaintiff seeks a

4   judgment ordering defendant "to specifically perform the terms of this agreement and complete

5   the sale" of the property for the purchase price minus the $51,000 in repairs completed by

6   plaintiff.  Id. ¶ 40.  Plaintiff alleges in his complaint that this claim is not subject to the Tucker

7   Act, 28 U.S.C. § 1491, and that defendant is subject to civil suit under the National Housing Act,

8   12 U.S.C. § 1701.  Compl. ¶ 45.  Plaintiff seeks declaratory relief as to this claim and "requests a

9   judicial declaration from this Court regarding these parties' rights and responsibilities, including

10  but not limited to the (1) validity and enforceability of the agreement to sell the Subject Real

11  Property to Plaintiff and (2) the validity of the Plaintiff's equitable lien rights against the Subject

12  Real Property."  Id. ¶ 60.

13          In its motion to dismiss, defendant argues that the court lacks subject matter jurisdiction

14  over this claim, "which sound[s] in contract and exceed[s] $10,000."  ECF No. 6-1 at 2.

15  Defendant contends that under the Tucker Act, 28 U.S.C. § 1346, the Court of Federal Claims has

16  exclusive jurisdiction over such claims.

17          In opposition, plaintiff argues that defendant waived its sovereign immunity under the

18  National Housing Act.  ECF No. 12 at 4.  While plaintiff "concedes that ordinarily, persons suing

19  the United States on a contract-based cause[] of action are subject to the Tucker Act . . . [he

20  argues] that general rule is subject [to] exception when a waiver of sovereign immunity is

21  otherwise provided by statute like the National Housing Act."  Id.  Plaintiff argues that the

22  National Housing Act broadly waives sovereign immunity in relation to claims against HUD.

23  ECF No. 12 at 5.  Plaintiff also argues that because he is seeking satisfaction of the judgment

24  from the subject property, he can therefore "seek recovery against the Subject Property acquired

25  and owned by HUD under the National Housing Act, not the assets of the United States

26  Treasury."  Id. at 6.

27          In reply, defendant argues that "[i]n the unlikely event [plaintiff] prevails on his oral

28  contract theory and proves damages, any award would be paid from the Judgment Fund, which is

1  funded by general appropriations."  ECF No. 26 at 3 (citing 31 U.S.C. § 1304; <u>Salazar v. Ramah</u>

2  <u>Navajo Chapter</u>, 132 S. Ct. 2181 (2012)).

3          In <u>McGuire v. United States</u>, 550 F.3d 903, 912 (9th Cir. 2008), the Ninth Circuit

4  explained how the Tucker Act and the Little Tucker Act interact to structure jurisdiction over

5  contract claims against the United States:

6          We cannot agree that the Tucker Act generally waives sovereign
        immunity for suits outside the Court of Federal Claims.  The
7          Tucker Act provides that the "Court of Federal Claims shall have
        jurisdiction to render judgment upon any claim against the United
8          States founded . . . upon the Constitution . . . ."  28 U.S.C.
        § 1491(a)(1).  The Supreme Court has required that "[a] waiver of
9          the  Federal  Government's  sovereign  immunity  must  be
        unequivocally expressed in statutory text, and will not be implied."
10         <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996) (internal citations omitted).
        Additionally, "the Government's consent to be sued must be
11         construed strictly in favor of the sovereign, and not enlarged . . .
        beyond what the language requires."     <u>United States v. Nordic</u>
12         <u>Village</u>, 503 U.S. 30, 34 (1992) (internal quotations and citations
        omitted).  Here, the statutory text of the Tucker Act is far from an
13         "unequivocal expression" of consent to suit in federal district court.
        Indeed, if anything, the Tucker Act unequivocally limits claims like
14         McGuire's to the Court of Federal Claims.

15         This view is reinforced by the language in the Little Tucker Act that
        expressly provides for federal district court jurisdiction over Tucker
16         Act claims for $10,000 or less.  The Little Tucker Act "effects . . .
        [an] explicit waiver" of sovereign immunity to such suits in district
17         court.  <u>Army & Air Force Exch. Serv. v. Sheehan</u>, 456 U.S. 728
        (1982).     The express inclusion of concurrent district court
18         jurisdiction in the Little Tucker Act suggests that Congress
        intended to preclude district court jurisdiction over claims in excess
19         of $10,000.

20  <u>Id.</u>; accord <u>Marceau v. Blackfeet Hous. Auth.</u>, 455 F.3d 974, 986 (9th Cir. 2006) <u>opinion</u>

21  <u>readopted in relevant part</u>, 540 F.3d 916, 929 (9th Cir. 2008) ("The Tucker Act vests the Court of

22  Federal Claims with exclusive jurisdiction for contract claims against the United States.  <u>See</u> 28

23  U.S.C. § 1491(a)(1).  The Little Tucker Act carves out a minor exception, creating concurrent

24  jurisdiction in the district courts for contract claims against the United States not exceeding

25  $10,000.  <u>See</u> 28 U.S.C. § 1346(a)(2).").

26          Here, the complaint alleges more than $10,000 in damages based on defendant's alleged

27  oral contract to sell the subject property to plaintiff.  Compl. ¶ 11.  Therefore, under the plain

28  language of the governing statutes, this court lacks subject matter jurisdiction over plaintiff's

1   breach of contract claim.  That claim can be brought only in the Court of Federal Claims.

2            With regard to plaintiff's argument that he "looks to the Subject Property for satisfaction

3   of the judgment," ECF No. 12 at 6, plaintiff has provided no authority, and the court is unaware

4   of any, providing that a plaintiff can avoid sovereign immunity by seeking satisfaction of a

5   judgment from a federal resource purportedly distinct from the United States Treasury.

6   Moreover, the court is satisfied that any potential recovery by plaintiff will in fact come from the

7   United States Treasury, and that the United States is therefore the real party in interest.  See

8   Marcus Garvey Square, Inc. v. Winston Burnett Const. Co. of Cal., Inc., 595 F.2d 1126 (9th Cir.

9   1979) (declining to hold that undisbursed mortgage proceeds constituted a separate fund and

10  finding that a contract claim against HUD was one against the United States).[2]  See also DSI

11  Corp. v. Sec'y of Hous. and Urban Dev., 594 F.2d 177, 180 (9th Cir. 1979); Weeks Const., Inc. v.

12  Oglala Sioux Hous. Auth., 797 F.2d 668, 675–76, 676 n.9 (8th Cir. 1986).

13           Marcus Garvey Square specifically rejected the theory that plaintiff forwards here: that the

14  National Housing Act waives sovereign immunity and thus permits district court jurisdiction

15  notwithstanding the Tucker Act.  Marcus Garvey Square, 595 F.2d at 1132 (in an action in

16  contract against the United States "the waiver of sovereign immunity in [the National Housing

17  Act] does not apply."); see also DSI Corp., 594 F.2d at 180 (finding that the waiver of sovereign

18  immunity contained in the National Housing Act does not apply to a claim against the United

19  States predicated on the alleged violation of contractual rights); Teitelbaum v. U.S. Dep't of

20  Hous. and Urban Dev., 953 F. Supp. 326, 330–31 (D. Nev. 1996) (rejecting the argument that the

21  National Housing Act provided a waiver of immunity separate from the Tucker Act for a suit that

22  claimed breach of an oral contract that modified a HUD mortgage and finding that the

23  "[c]omplaint simply stretche[d] the [National Housing Act's] waiver of sovereign immunity

24

_____

25  [2]  Plaintiff relies on Marcus Garvey Square for the proposition that sovereign immunity applies
    only where a judgment must be satisfied out of the United States Treasury.  Plaintiff misreads the

26  case.  First, plaintiff's reading "would be in obvious conflict with the later-decided cases Meyer
    [510 U.S. 471] and Flamingo Industries [540 U.S. 736]," which establish the governing test for

27  sovereign immunity.  Second, Marcus Garvey Square "speaks only to the question of whether the
    United States' sovereign immunity is waived by a statute authorizing an agency head to sue and
    be sued, when the United States rather than the agency head is the real party in interest."  Kinetic

28  Sys., Inc. v. Fed. Fin. Bank, 895 F. Supp. 2d 983, 999 (N.D. Cal. 2012).

1     beyond its purpose").

2          Having determined that the court lacks subjection matter jurisdiction over plaintiff's

3   breach of contract claim under the Tucker Act, and that there is no applicable waiver of sovereign

4   immunity in the Little Tucker Act or the National Housing Act, the undersigned must recommend

5   dismissal.  Because the claim may be presented to the Court of Federal Claims, however,

6   dismissal should be without prejudice to assertion in that forum.[3]

7   C.       Request to Amend

8          Following the court's October 1, 2014 hearing on the instant motions, plaintiff filed a

9   document styled as a response to defendant's reply in support of its motion to dismiss.  ECF No.

10   28.  Plaintiff seeks leave to amend his complaint to dismiss his claims against the non-federal

11   defendants,[4] dismiss his breach of contract and promissory estoppel claims against the Secretary

12   of HUD, and allege only a claim for restitution as good faith improver of property and declaratory

13   relief regarding equitable lien rights.  Id. at 2–3.

14          The court construes plaintiff's "response" as a motion to amend.  Under Federal Rule of

15   Civil Procedure 15, "a party may amend its pleading only with the opposing party's written

16   consent or the court's leave.  The court should freely give leave when justice so requires."  Fed.

17   R. Civ. P. 15(a)(2); see also Desertrain v. City of L.A., 754 F.3d 1147, 1154 (9th Cir. 2014)

18   ("'this policy is to be applied with extreme liberality'" (quoting Morongo Band of Mission

19   Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990))).  "Valid reasons for denying leave to

20   amend include undue delay, bad faith, prejudice, and futility."  Cal. Architectural Bldg. Prod. v.

21   Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); see also Klamath-Lake Pharm. Ass'n

22   v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to

23   amend shall be freely given, the court does not have to allow futile amendments).

24          Here, plaintiff seeks leave to amend his complaint to state only a claim for restitution and

25

26

27

28

[3]  At hearing on the motion to dismiss, the court discussed with the parties the possibility of transferring the breach of contract claim to the Court of Federal Claims.  In light of petitioner's subsequent request to amend the complaint to dismiss the breach of contract claim, the undersigned does not recommend a transfer.  Dismissal without prejudice will preserve plaintiff's ability to renew his claim in the court that has jurisdiction over it, should plaintiff so desire.

[4]  The named defendants other than the Secretary have not been served.

1  related declaratory relief, against the HUD defendant only.  For the reasons discussed above,

2  plaintiff's defective restitution claim against HUD cannot be cured by amendment.  Because

3  amendment would be futile, plaintiff's motion to amend should be denied.

4         Plaintiff also seeks amendment to abandon his claims against the unserved non-federal

5  defendants.  In light of the procedural posture of the case, such amendment is not necessary.

6  Because this court cannot entertain any of the claims against the sole federal defendant, which

7  provided the basis for removal, the undersigned will recommend that the court decline to exercise

8  supplemental jurisdiction over the remaining claims.  <u>See</u> 28 U.S.C. § 1367(c)(3) .  This will

9  result in the effective dismissal without prejudice of the non-federal defendants.

10                                    CONCLUSION

11        Based on the foregoing, IT IS HEREBY RECOMMENDED that:

12        1.      Plaintiff's motion to remand (ECF No. 7) be denied;

13        2.      Defendant's motion to dismiss (ECF No. 6) be granted as follows:

14                a.      Plaintiff's promissory estoppel and restitution claims, and related request

15                        for declaratory relief, be dismissed with prejudice; and

16                b.      Plaintiff's breach of contract claim and related request for declaratory relief

17                        be dismissed without prejudice to renewal in the Court of    Federal

18                        Claims;

19        3.      Plaintiff's motion to amend (ECF No. 28) be denied as futile; and

20        4.      Plaintiff's remaining state law claims against the unserved defendants be

21                        dismissed pursuant to 28 U.S.C. § 1367(c)(3), without prejudice to the re-filing of

22                        an action in state court.

23        These findings and recommendations are submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25  after being served with these findings and recommendations, any party may file written

26  objections with the court and serve a copy on all parties.  Such a document should be captioned

27  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

28  shall be served and filed within fourteen days after service of the objections.  The parties are

1   advised that failure to file objections within the specified time may waive the right to appeal the

2   District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1156 (9th Cir. 1991).

3   DATED: November 11, 2014

4   _Allison Clare_

5   ALLISON CLAIRE
    UNITED STATES MAGISTRATE JUDGE

18